## ALLAIN PASQUOIN *vs.* THE AMERICAN SCHOONER DAVID EVANS.

### September 26, 1910.

*Assault and battery—Self-defense—Words and blows:* Words do not justify blows. Neither does the use of insulting language deprive the user ·of the right to use force to meet force in self-defense.

*Same—Right of captain of vessel to use force when attacked by seaman:* The master of a vessel while in port, on being insulted and forcibly attacked by a seaman, is justified in using necessary force to maintain discipline and in self-defense.

*In Admiralty*: Libel *in rem* for damages for an assault and battery, and for wages.

*George A. Davis,* Proctor for Libelant.
*C. F. Peterson,* Proctor for Libellee.

ROBERTSON, J. The libelant, a seaman, claims damages for an assault and battery alleged to have been committed on him by the captain of the American schooner David Evans while she lay at Pearl Harbor discharging cargo; also wages, medical expenses and the cost of transportation to Aberdeen, Washington, the port of departure.

The evidence, which is conflicting, need not be reviewed at length. The principal facts, including those which appear from the weight of the testimony and those as to which there is no dispute are as follows:

On the evening of September 14th, 1910, the schooner was

at Pearl Harbor, Island of Oahu, where she had previously arrived with a cargo of lumber from Aberdeen, Washington; the vessel was lying at some distance from the shore, being connected therewith by a row of timbers each twelve inches square, lashed together, two abreast; this boom had become slippery in places; on the previous evening the libelant told the captain that he thought he had hurt himself while handling some heavy timbers and obtained permission to go to see a U. S. Marine Hospital physician at Honolulu on the following day; on the next morning the libelant went to the city, and returned at about six o'clock in the evening; he was slightly under the influence of liquor; while walking out to the vessel on the boom he slipped and fell into the water; a fellow seaman helped him to get back on to the boom and he proceeded on his way to the vessel, going up the gangway on to the poop deck; on reaching the deck he began to curse and swear in a loud voice which attracted the attention of the captain and the second mate who were in the cabin; the latter went up on deck and seeing the libelant there told him to quit using such language; then the captain went up and applying an abusive epithet to the libelant, told him to go forward; the captain asked him if he was looking for trouble, and there was some talk about fight; the libelant wanted the captain to strike him first; that the captain declined to do; the captain and mate succeeded in getting the libelant down to the main deck but he refused to go to the forecastle; the libelant directed a torrent of filthy, insulting and abusive language at the captain and threatened to "fix" him; the captain said he would put libelant in irons, and going to the cabin returned with a pair of handcuffs; as the captain approached to apply the handcuffs the libelant struck him on the mouth with his fist; in parrying another blow the captain sustained a bruise on his left wrist; on being attacked by the libelant the captain struck him three or four rapid, though not heavy, blows on the head with the handcuffs which he held in his right hand; the blows caused blood to flow from the libelant's head and the fracas ended; the libelant was led forward by two of his ship-

mates who washed his head, and the next morning he left the vessel. A physician who examined the libelant's head three days later testified that he found four slight abrasions on the scalp which had since healed over.

The point principally argued was, assuming that the captain could properly use force in maintaining order and discipline on the ship and in defending himself against the attack which was made upon him, whether, under the circumstances, he used excessive force.

The captain was wrong in applying the abusive epithet to the libelant when on the poop deck as above stated. But the captain's error did not justify the disobedience of the libelant, nor did it warrant the use of similar and worse language on the part of the libelant, nor did it excuse the blows which he aimed at the captain.

Words do not justify blows. Neither does the use of insulting language deprive the user of the right to use force to meet force in self-defence.

The courts are properly expected to vigorously redress the just grievances of seamen whenever called upon for relief. At the same time the owners and officers of ships have rights which cannot be ignored.

Does the law tie the hands of a ship-master who is being insulted, vilified and assaulted by a disorderly and disobedient seaman? It ought not, nor does it.

Under such circumstances, the ship-master being permitted to use force, he is not to be held liable in damages on any fine-spun theories as to the exact amount of force which he might properly have used.

And so in this case, it is not at all clear that the captain used more force than was necessary to maintain discipline and order, and to repel the attack which was made on him by the libelant who is a man of large and strong physique.

The libel must, therefore, be dismissed.

## ON REHEARING.

### September 28, 1910.

The libelant asks for a rehearing of this case on the ground that in the foregoing opinion the claims for wages, medical expenses and maintenance were not passed on.

The claims set up in the libel are all based on the theory that the contract of employment between the vessel and the libelant was broken and terminated by an unjustifiable assault and battery alleged to have been committed upon the libelant by the captain of the schooner.

On this understanding it was assumed that when holding that no such assault and battery was committed and that no damages were recoverable, the remaining claims necessarily fell also. It is not alleged that there was any dispute about wages. The contention was that the libelant was entitled to be paid off because of the alleged violation of the contract by the captain.

The view taken by the court is that the captain did not violate the contract and that the libelant is not entitled to be paid off on the theory advanced by him.

As to the maintenance and medical expenses. Counsel for the libelant cites numerous cases to the effect that where a seaman is injured while in the service of the ship he is entitled to be maintained, cared for, and attended at the expense of the vessel. The proposition is well established in admiralty law. It cannot, however, be successfully contended that in committing the malicious assault on the captain of the schooner the libelant was acting in the service of the ship. In none of the cases cited were the facts similar to those involved here.

The testimony shows that on September 15th the libelant had his head dressed by the Marine Hospital physician; that on the 17th, and daily following till the 23rd, he went to another physician evidently for the purpose of obtaining the physician's testimony for the purposes of the litigation. The treatment given by the latter physician was trivial. Under similar circumstances this court held in the case of *Alfred*

*Soderman v. The Hawaiian Isles,* decided June 22, 1906 (Ante p. 100), that "the claim for maintenance and cure seems too trvial to merit consideration."

The point was raised by counsel for the libellee that a suit *in rem* cannot be maintained to recover damages for an assault and battery under circumstances such as are alleged here. Admiralty rule 16. The point may be well taken but is not passed on in view of the grounds stated as the basis for the conclusion arrived at.

Rehearing denied.

———

*Affirmed on appeal*: See *The David Evans,* 187 Fed. 775.